**In re LINC CAPITAL, INC. Debtor.**

No. 01–B–03320.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 18, 2002.

James D. Newbold, Esq., Assistant Attorney General, Chicago, IL, for State of Illinois, Department of Revenue.

Matthew N. Kleinman, Esq., Chicago, IL, for Linc Capital.

### MEMORANDUM OPINION AND ORDER ON STATE'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR DECLARATORY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Linc Capital, Inc. ("Debtor") filed its voluntary bankruptcy under Chapter 11 of

the Bankruptcy Code, Title 11 U.S.C. In the course of this proceeding, it sold assets under 11 U.S.C. § 363, just prior to confirmation of its Plan which provided for that sale. A Conclusion of Law entered prior to entry of Order approving sale provided that 11 U.S.C. § 1146(c) applied, conditional on the Plan being later confirmed ("Conclusion M"), thereby giving the parties status to claim exemption from state transfer taxes referred to in § 1146(c) that might be based on the sale. The Plan was confirmed, but no judgment or order was entered specifically designating any particular state taxes as exempt.

The State of Illinois (the "State"), which had objected to Conclusion entered as to § 1146(c) applicability to a sale of Debtor's assets now objects to the fact that no judgment was entered specifically exempting any Illinois transfer taxes by the Order approving sale, or by the later Order approving Plan confirmation. It moves to amend the sale Order and the Order of Plan confirmation to force designation and declaration of specific taxes asserted to be exempt. It alternatively requests declaratory ruling that no exemption exists under § 1146(c) as to any particular Illinois tax. However, it did not appeal from the Order approving sale on December 14, 2001, or the Order approving confirmation, and has not filed an Adversary proceeding as required under Rule 7001 Fed.R.Bankr.P. to seek a declaratory judgment. Moreover, while an Assistant Attorney General stated on the record that the State was "not asserting" its sovereign immunity, there has been no waiver of sovereign immunity either orally or by writing filed in this case.[1]

The discussion below concludes that Conclusion "M" entered prior to the Order approving sale, which found applicability of § 1146(c) as part of the sale process, and modified this date by separate order so as to re-enter a more clearly drafted Conclusion, was not a suit against the State of Illinois. Therefore the State had no sovereign immunity against the entry thereof. It further reasons that if a judgment order had been entered or were now entered finding specified taxes exempt or even granting or denying the motion for declaratory relief, or if parties to the sale sought to enforce the exemption here as to particular Illinois taxes, that would have required or would now require a suit against the State of Illinois as to which it enjoys sovereign immunity. If the State chooses to litigate here whether or not a § 1146(c) exemption applies to any particular taxes, it must file an Adversary Complaint seeking declaratory judgment on that question. The filing of such Complaint would clearly be an act of waiver of sovereign immunity, (*Lapides v. Board of Regents of University System of Georgia, et al,* — U.S. —, 122 S.Ct. 1640, 1643–44, 152 L.Ed.2d 806 (2002)), but such action has not been filed by it.

To the extent that the State's motion seeks to alter or amend the Order approving sale entered December 14, 2001, it must be considered under Rule 9023(e) Fed.R.Bankr.P. [Rule 59(e) Fed.R.Civ.P.] and essentially raises the question whether any error of law was made in the Conclusion to the extent § 1146(c) was found applicable. *See Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 750 (7th Cir.1995). As discussed below, no such error occurred.

---

**1.** The comment referred to was not presented in court as a waiver of immunity. Since no waiver has been asserted in any form or by any state official, it is not appropriate to decide here whether an Assistant Attorney General even has authority to waive sovereign immunity absent a written waiver signed by the Illinois Attorney General.

Therefore, the State's alternative motions to amend the Order approving the sale or to enter declaratory relief without an Adversary being filed by it are denied.

## JURISDICTION

Jurisdiction over the present case lies here pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This matter is referred here by the standing referral under District Court Internal Operating Procedure 15(a), and this is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (N) since it relates to the sale and confirmation orders. Venue is proper in this district under 28 U.S.C. § 1409(a).

## FACTS AND BACKGROUND

Since 1975, Linc Capital, Inc. provided specialty financing, equipment leasing and distribution, equipment rental, and equity capital to high-tech companies. In March of 2000, Linc defaulted on its principal loans. The company struggled to recapitalize after its default and continued to operate under forbearance agreements with some secured creditors. But the company defaulted on those agreements, and an involuntary Chapter 7 Bankruptcy Petition was filed by three of the company's creditors on February 1, 2001.

On Linc's Motion, the case was converted under Chapter 11 of the Bankruptcy Code. Linc has since liquidated substantially all of its assets pursuant to two sales held pursuant to 11 U.S.C. § 363. A Joint Plan of Reorganization submitted by Linc and the Committee of Unsecured Creditors was confirmed on January 9, 2002.

The State's objection to the first sale of Linc's assets was filed November 30, 2001. Specifically, the State challenged a provision of Linc's motion for approval to sell its lease portfolio which stated that the transaction was to be exempt from state transfer taxes pursuant to § 1146(c) of the Bankruptcy Code, Title 11 U.S.C. According to that objection, Linc failed to identify any asset transfer it claimed to be exempt from taxes, or to specify what taxing authority it sought to bind by determination that asset transfers were exempted. The State contended that Linc was seeking a generalized "comfort order" that could be used in the future if a taxable transaction was later identified. Linc responded by removing the provision in issue from the motion to sell, and that first sale was approved here on December 5, 2001.

However, Linc reinserted a similar provision in a second motion for sale of certain assets related to its investment in Solopak Pharmaceuticals, Inc. ("Solopak assets"). The Solopak assets consisted of equipment and an unexpired lease on a production facility in Elk Grove, Illinois, which Linc acquired after its borrower Solopak Pharmaceuticals, Inc. filed for Chapter 11. The State renewed its objection to the requested § 1146(c) exemption provision in an objection filed December 12. The Court entered Findings of Fact and Conclusions of Law setting forth reasons for approving the sale of the Solopak assets on December 14. One Conclusion of Law recited that § 1146(c) would apply if Linc subsequently confirmed its reorganization Plan. That Conclusion was entered over objection of the State which made an oral motion to treat its objection as a motion for a declaration that § 1146(c) did not apply to the Solopak transaction because, *inter alia*, that transaction was not made "under a plan" of reorganization as required by that provision. The sale of Solopak assets was approved December 14, 2001, but there was no provision in the Order dealing with § 1146(c) or specifying any particular exempt tax, or providing even general language on the subject. On December 21, the State filed its present motion which, *inter alia*, seeks to alter or amend

the Order approving the Solopak sale or the confirmation Order, or for entry of a declaration that specified State taxes are exempt or none are exempt.

Linc's objection to the State's pending motion asserts three grounds for denial: (1) the motion is improper because the Conclusion under § 1146(c) was not requested by Linc to be incorporated in the sale or confirmation Order nor was it included in those Orders; (2) the State is seeking an advisory opinion since there was no tax at issue from which Linc sought relief under § 1146(c); and (3) the State is estopped from raising an objection to the Judgment Order or the Findings because it consented to the form of both before they were entered by the court.

## DISCUSSION

### The Conclusion that § 1146(c) applied to the Solopak sale did not offend the 11th Amendment

■ Although the State has not made an express challenge to this court's jurisdiction, that issue must be considered because of the ever expanding reach of state sovereignty as interpreted by recent Supreme Court cases. *Federal Maritime Commission v. South Carolina State Ports Authority*, — U.S. ——, 122 S.Ct. 1864, 1874, 152 L.Ed.2d 962 (2002) (holding that 11th Amendment barred Federal Maritime Commission from adjudicating complaint filed by private party against unconsenting state); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (Congress cannot abrogate states' immunity under Age Discrimination Act); *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (11th Amendment bars private suits against states under ADA); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680–81, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (state does not constructively waive immunity protected by 11th Amendment by participating in nongovernmental function regulated by federal government); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 647–48, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (Congress cannot authorize suits against states for patent infringement); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (even where Constitution vests complete law-making power in Congress, it cannot authorize private suits against unconsenting states). Thus, if sovereign immunity barred entry of the Conclusion as to applicability of § 1146, this court would lack jurisdiction to enter it.

■ The Eleventh Amendment to the Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. According to Supreme Court jurisprudence, state immunity from suit is not conferred by the 11th Amendment; rather, the 11th Amendment merely recognizes the sovereignty inherent in state governments, and thereby bars private citizens from subjecting states to the obligations of answering suit in federal court. *Seminole Tribe*, 517 U.S. at 44, 116 S.Ct. 1114 (the 11th Amendment presupposes that each state has sovereign immunity).

■ States may waive their sovereign immunity by legislative enactments or by consenting to the jurisdiction of a federal court. *See Lapides v. Board of Regents of University System of Georgia, et al,* — U.S. ——, 122 S.Ct. 1640, 1643–44, 152 L.Ed.2d 806 (voluntary appearance in fed-

eral court constitutes waiver of 11th Amendment immunity). Further, the 11th Amendment does not protect states from the impact of federal court rulings which do not require the court to exercise jurisdiction over the state in its capacity as a state government. *In re Hechinger Investment Co. of Delaware,* 254 B.R. 306, 314 (Bankr.D.Del.2000), *aff'd by,* 276 B.R. 43 (D.Del.2002). To determine what constitutes a "suit" against the state that is barred by sovereign immunity, and what constitutes a collateral ruling which does not constitute such a suit, depends on analysis of many possible issues in bankruptcy.

The § 1146 Conclusion here that the sale was "under a confirmed plan" falls into the latter category, and was not a "suit" against any state.

Two precedents are directly on point in the case presented here. *See State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777 (4th Cir.1997); *Hechinger,* 254 B.R. 306. In those cases, the states asserted that the Eleventh Amendment barred the bankruptcy court from ruling that the debtor was exempt from taxation under § 1146(c). However, the cited opinions reasoned that the proceedings were not impermissible suits against the state because the state was not compelled to appear and the bankruptcy court's ruling did not require it to assert jurisdiction over the state. *Antonelli,* 123 F.3d at 786–87; *Hechinger,* 254 B.R. at 314. Rather, the orders in issue related to property of the state which was within the constructive custody of the bankruptcy court. 28 U.S.C. § 1334(e). Thus, both opinions held that the 11th Amendment does not bar bankruptcy courts from exercising jurisdiction over the debtor's estate, even if a consequence of such exercise indirectly affects the interest of a state. *Antonelli,* 123 F.3d at 787; *Hechinger,* 254 B.R. at 314.

Congress has the power to enact uniform bankruptcy laws which allow debtors to transfer property as part of a reorganization plan. U.S. Const. art. I, § 8, cl. 4. Such transfers were found by Congress to be hindered if they were subjected to state transfer taxes. Therefore, the Bankruptcy Code permits bankruptcy courts under § 1146 to qualify transactions for possible exemption from taxation if the sale transfer occurs "under a confirmed plan." *Antonelli,* 123 F.3d at 781. Armed with the ruling here that the sale was "under a confirmed plan" and therefore implicates § 1146, a party may then use that as a shield to defend against collection efforts in state court. But the 11th Amendment clearly bars debtors from bringing an Adversary proceeding here to obtain a ruling as to particular taxes. *See In re A.H. Robins Company, Inc.,* 235 B.R. 406 (Bankr.E.D.Va.1999) (adversary complaint to enforce provision of confirmation order was barred by 11th Amendment).

Under the reasoning of *Antonelli* and *Hechinger,* the Conclusion conditionally approving sale of Linc's assets under § 1146 did not violate the 11th Amendment. That Conclusion was not made pursuant to an exercise of jurisdiction over the State; rather, it was entered pursuant to jurisdiction over the debtor and sale of its property.

*The State's Motion to Amend*

■ A motion to alter or amend orders is governed by Fed.R.Civ.P. 59(e) [made applicable to bankruptcy by Fed. R.Bankr.P. 9023(e) ]. Parties seeking such relief are required to show that the judgment was the result of an error of law or fact or must present newly discovered evidence. *Federal Deposit Insurance Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986).

No new evidence has been offered and no error of law has been demonstrated here. The wording of Conclusion "M"

qualifies the sale for possible application of 11 U.S.C. § 1146(c). However, the State's motion has drawn the Court's attention to some ambiguous wording in Conclusion "M", and so the original wording has by order been amended and replaced by the following Conclusion "M" which is here in issue:

> Pursuant to testimony at the sale hearing and for reasons set forth on the record in open court, conditional upon confirmation of the Debtor's Plan of reorganization entered into evidence at the sale hearing, and effective upon entry of Order confirming such Plan, the sale of Solopak assets is "under a plan confirmed under § 1129" within the meaning of 11 U.S.C. § 1146(c).

Entry of that Conclusion was not in error merely because the sale occurred just prior to Plan confirmation and not the same day. The Conclusion in issue was conditional on subsequent Plan confirmation, and the Plan provided for the sale in question even though the sale itself was approved 25 days before Plan confirmation.

■ The State argues that the sale and transfer of Solopak assets was not made "under" a confirmed plan since Linc had not confirmed its Plan at the time of the transfer and § 1146(c) only applies to transfers "under a confirmed plan." The State's position is supported by *In re NVR, LP*, 189 F.3d 442 (4th Cir.1999), which held that preconfirmation transfers were not covered by the exemption in § 1146(c). *Id.* at 456–58. The panel opinion in *NVR* was guided by the principle that courts must narrowly construe exemptions from state taxation. *Id.* at 457 (citing *California State Board of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989)). Further, the panel looked to what it considered as the plain meaning of the word "under" and decided that a preconfirmation sale could not be considered to occur under a plan that did not exist when the sale was consummated. *Id.* *NVR* reasoned that limiting § 1146(c) to postconfirmation transfers achieves the proper balance between aiding the debtor's reorganization and noninterference with the state's right to levy taxes. *Id.* at 458.

The reasoning in *In re Jacoby–Bender, Inc.*, 40 B.R. 10 (Bankr.E.D.N.Y.1984), and the affirming opinion by a Second Circuit panel at 758 F.2d 840, 842 (2nd Cir.1985), is more persuasive.

In *Jacoby–Bender*, the bankruptcy judge's opinion noted that Congress has given debtors the flexibility to transfer property directly to creditors or third-parties, and that such transfers will qualify for the exemption irrespective of whether they occurred before or after confirmation. *Jacoby–Bender*, 40 B.R. at 16–17 citing 11 U.S.C. §§ 1123(a)(5)(B), (C), (D), and (J). The purchaser of debtor's real estate had sought an order exempting it from deed recordation fees under § 1146(c). The bankruptcy judge initially refused to issue the order because the debtor had not confirmed its plan. However, after the plan was confirmed, the court allowed the § 1146(c) exemption to apply. The opinion reasoned that just as the debtor may receive the exemption for preconfirmation transfers made to entities related to the estate, there was no reason it should not be able to treat a preconfirmation transfer to a third-party as being made "under" a confirmed plan; since, the debtor's reorganization is equally benefitted under either scenario. *Id.* at 17. This reasoning was adopted by the Second Circuit which affirmed the lower court. The Circuit opinion noted that § 1146(c) was derived from Section 267 of Chapter X of the old Bankruptcy Act, and that § 267 had related to transactions "which serve to execute or make effective a plan confirmed under Chapter X." *In re Jacoby–Bender, Inc.*,

758 F.2d 840, 842 (2nd Cir.1985) (quoting 6A Collier on Bankruptcy ¶ 15.08, at 836–40 (14th ed.1977)). It thus reasoned that a preconfirmation sale and transfer can give meaning and effect to a later confirmed plan.

The Fourth Circuit panel in *NVR* sought to distinguish *Jacoby–Bender* by stating that the earlier opinion did not deal with a preconfirmation transfer, but with whether § 1146(c) covered a transaction that was not mentioned in a confirmed plan. *NVR, LP,* 189 F.3d at 455. The Second Circuit opinion had commented that the confirmed plan in that case did not have to include specifics for the exemption to apply. However, the bankruptcy court opinion showed that the transfer in *Jacoby–Bender* was a preconfirmation transfer, though the court's approval of the sale came after confirmation. *See In re Jacoby–Bender,* 34 B.R. 60, 62 (Bankr.E.D.N.Y.1983) (initially refusing to grant exemption because plan was not yet confirmed, and noting that if the debtor's plan had already been confirmed prior to the sale the transfer would have been covered by § 1146(c)).

This court followed the reasoning of *Jacoby–Bender* when a Conclusion was entered holding the transaction governed by § 1146(c), but conditioned on ultimate confirmation of the pending Plan. The omission of this subject from the final sale Order was not an error of law since there was no judgment or order ruling that a particular tax was exempt.

The effect of the State argument would be to bar a bankruptcy judge from finding § 1146(c) applicable to a bankruptcy sale unless a particular state tax is adjudicated, but it has not filed its Adversary Complaint to adjudicate that issue here and thereby give this Court authority to adjudicate that issue. Only a bankruptcy judge has authority to determine applicability of § 1146(c) in the course of exercising authority over asset sales and plan confirmation. If that issue could not be determined here as part of the sale process because the State does not waive sovereign immunity, then § 1146 would be totally nullified.

*Standard for Declaratory Judgment*

Federal courts are empowered to give declaratory judgments by the Declaratory Judgment Act. 28 U.S.C. § 2201. That Act does not enlarge the jurisdiction of federal courts nor does it expand substantive rights. *Deveraux v. City of Chicago,* 14 F.3d 328, 330 (7th Cir.1994) (language of statute tracks Article III to avoid unconstitutionality). The court's subject matter jurisdiction must be independent of the declaratory judgment action, and such motions are discretionary even where the court has jurisdiction. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). To support a declaratory judgment action there must be a substantial controversy that is real and immediate between parties with adverse legal interest. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). There is no precise definition of "case or controversy." *Id.* at 273, 61 S.Ct. 510. However, a court cannot enter a declaratory judgment unless its ruling will provide specific relief which binds the parties or alters the legal relationship between them. *Deveraux,* 14 F.3d at 331.

The State has not identified a concrete controversy between it and Linc with regard to the exemption possible under § 1146(c), and has not presented a particular tax issue for determination. Moreover, a declaratory ruling must be sought by Adversary Complaint. Rule 7001 Fed. R.Bankr.P. But, most significant here, the State has not waived its sovereign immunity against adjudication as to particular taxes despite its pending motion.

This court did not, and cannot on the present State motion, enter a declaratory

ruling as to any particular tax in the absence of an actual controversy over a tax. Such controversy may only be presented here in an Adversary proceeding filed by the State, if it so wishes under Rule 7001 Fed.R.Bankr.P., seeking determination as to any tax and thereby waiving its sovereign immunity as to such determination. *Lapides v. Board of Regents of University System of Georgia, et al.,* — U.S. —, 122 S.Ct. 1640, 1643–44, 152 L.Ed.2d 806 (2002).

## CONCLUSION AND ORDER

Based on the foregoing, the State's motion to alter or amend Order approving the Solopak asset sale is denied. Its alternative motion for declaratory relief is stricken without prejudice to it filing an action for declaratory relief as to any particular taxes as an Adversary Complaint as required by Rule 7001 Fed.R.Bankr.P. and thereby presented as its waiver of sovereign immunity.