United States Court of Appeals,

Eleventh Circuit.

No. 95-2091.

Candace A. BEAUREGARD;  Aubrey B. Campbell;  May H. Jones;
Carolyn C. Whitehead, Plaintiffs-Appellees,

v.

Thomas OLSON, individually and in his official capacity as Tax
Collector of Marion County, Florida, Defendant-Appellant,

Marion County, Florida, Defendant.

June 12, 1996.

Appeal from the United States District Court for the Middle
District of Florida. (No. 93-109-Civ-Oc-20), Harvey E. Schlesinger,
Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LOGAN*, Senior
Circuit Judge.

EDMONDSON, Circuit Judge:

This interlocutory appeal is from the denial of Thomas Olson's

motion for summary judgment based on qualified immunity.  We

reverse the order denying qualified immunity, and we instruct that

the district court grant Olson immunity.  We also remand for

further proceedings.

I.

Defendant Olson has been the Marion County (Florida) Tax

Collector since 1971.  Plaintiffs are four of his former employees.

The Tax Collector—a constitutionally-created elected position—is

responsible for collecting taxes.  Under Florida law,*see* Fla.Stat.

§ 197.103, the Tax Collector is authorized to appoint deputies to

act in his behalf in carrying out the duties of the office.  Olson

---

*Honorable James K. Logan, Senior U.S. Circuit Judge for the
Tenth Circuit, sitting by designation.

deputized all his employees, including Plaintiffs.

In 1992, Olson was opposed for reelection. At the outset, Olson advised all staff members that they were free to support either him or his opponent or to remain neutral. Two of the plaintiffs, Whitehead and Jones, supported Olson's opponent. The other two plaintiffs, Beauregard and Campbell, say they remained neutral during the campaign.

Olson was reelected. Over three months later, Olson fired five employees, including the four plaintiffs. Olson says that the terminations were based on reasons other than Plaintiffs' failure to support his reelection bid. Asserting these non-political reasons to be pretextual, Plaintiffs sued Olson individually and in his official capacity under 42 U.S.C. § 1983. They claimed that Olson, acting under color of state law, deprived them of their First Amendment right not to be fired for political patronage reasons.

Olson moved for summary judgment; one argument he made was that he was entitled to qualified immunity. The district court granted Olson's motion, in part because Plaintiffs were deputized employees of the Tax Collector. But, the district court later vacated this order and then denied Olson immunity. In its order denying Olson immunity, the district court wrote only that "it is clear that genuine issues of material fact remain to be resolved in this case;" the court did not discuss whether, taking all disputed facts in favor of Plaintiffs, it was clearly established that Olson acted unlawfully in firing Plaintiffs.

Olson then filed a motion to reconsider. In the order denying

Olson's motion to reconsider, the district court observed that "plaintiffs have offered evidence that tends to show that they were nothing more than ministerial employees." And, the district court concluded that the firings of Plaintiffs, "if they occurred for political reasons, would necessarily violate clearly established rights in that it is clear that clerical employees are entitled to the protection Plaintiffs seek."

## II.

For purposes of our review we accept as true both that Plaintiffs' job duties were ministerial and that Olson fired them for political reasons.[1]  Even so, Olson says he is entitled to qualified immunity.  So, we have jurisdiction,  *see Behrens v. Pelletier,* --- U.S. ----, ---- 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996), to decide the core qualified immunity question of whether it was clearly established before Olson acted that he could not lawfully fire these deputized clerical employees of the Tax Collector's office for political reasons.

Some employees do have a general First Amendment right not to be fired for political patronage reasons.  *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion); *and Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).  An employee might have this right if political affiliation is not an appropriate requirement for the effective performance of the job.  *See Branti,* 445 U.S. at 518-20, 100 S.Ct. at 1295; *see*

---

[1]We also accept as true the undisputed facts that Plaintiffs were employees of the Tax Collector's Office who were deputized under Florida law.  This circumstance was noted in the district court's initial order granting summary judgment and not later contradicted.

*also Terry v. Cook,* 866 F.2d 373, 377 (11th Cir.1989).

Olson, holding an office created by the Florida constitution, was empowered by Florida law to appoint deputies. All Plaintiffs were appointed deputies. This fact is important.[2] As deputies, Plaintiffs were authorized, by Florida law, to act on Olson's behalf in carrying out the duties of the Tax Collector's office. Olson says that *Terry v. Cook* makes clear that all deputies who have authority under state law to act on behalf of a state officer can be fired for patronage reasons—regardless of the particular deputies' historical, actual duties.[3] Plaintiffs, citing to *Elrod, supra,* respond that no rule exists permitting all deputies to be lawfully fired on patronage grounds. Instead, they say that what is required is an assessment of Plaintiffs' actual duties to determine whether, in fact, political loyalty is an appropriate requirement for the effective performance of their jobs.

But, in this qualified immunity case, we need not decide whether these deputized employees empowered by Florida law to act on behalf of the Tax Collector (a constitutional officer who faces

[2]Olson points us to the special status Florida law affords deputies. *See Blackburn v. Brorein,* 70 So.2d 293, 296 (Fla.1954) (en banc); *Murphy v. Mack,* 358 So.2d 822, 825 (Fla.1978); *Florida Public Employees Council 79, AFSCME v. Martin County Property Appraiser,* 521 So.2d 243 (Fla.Dist.Ct.App.1988).

[3]Olson also relies on *Martin County Property Appraiser,* 521 So.2d 243, where the court concluded that the "determinative factor" (that is, the factor which led the court to conclude deputy property appraisers were not "employees") was the power inherent in the plaintiffs' deputy status, not whether individual deputies "actually exercise a plenary range of duties." *Id.* at 244. This was so even where the deputies "primarily exercise[d] clerical duties." *Id.* The *Martin County* court concluded that employees empowered to "act on [the Property Appraiser's] behalf in carrying out the duties prescribed by law for that office" are the "alter ego" of the property appraiser. *Id.*

partisan elections) can lawfully be fired for patronage reasons regardless of their actual duties. For Olson personally to prevail, it is enough if it was not clearly established that firing Plaintiffs for political patronage reasons would violate federal law.[4] As we explained in *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc), for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to every reasonable person in Olson's place that to fire Plaintiffs would violate federal law.

None of the cases cited to us by Plaintiffs have so developed the law for deputy Tax Collectors in Florida. Plaintiffs rely chiefly on *Elrod, Branti,* and *Terry. Terry, supra,* is a case which Olson says actually shows the firings were lawful; and, to say the least, it certainly does not clearly establish the *unlawfulness* of these firings.[5] *Elrod, supra,* also does not clearly establish the unlawfulness of Olson's acts—even though one plaintiff in that case

---

[4]Whether or not Olson subjectively believed that political loyalty was required for Plaintiffs to do their jobs effectively does not matter. *See Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc) ("subjective intent of government actor defendants plays no part in qualified immunity analysis").

[5]In *Terry,* 866 F.2d 373, we found *no* violation of First Amendment rights—an Alabama sheriff was permitted to fire all deputies. The *Terry* court did not undertake a searching assessment of the individual deputies' actual duties. It also did not hold unlawful the firings of the non-deputy "ministerial" workers in the sheriff's office. See note 6, *infra,* on the hurdles facing a plaintiff seeking to use a remand case to clearly establish the contours of a federal right.

was "Chief Deputy of the Process Division."[6]

The other important case cited by Plaintiffs is *Branti, supra,* where the Supreme Court held unlawful the firings of two assistant public defenders. *Branti* is not "materially similar" to this case, which involves deputized employees of the Marion County Tax Collector's office. *See Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993) (facts of prior cases must be "materially similar" to clearly establish law).[7]

---

[6]No opinion in *Elrod* discussed whether the Chief Deputy of the Process Division had the power to act on behalf of the Sheriff in carrying out the duties of the office of Sheriff. How close Florida law and Illinois law are on the point of the legal significance of deputization is, itself, unclear. And, given the differences between the Cook County Sheriff's office and the Marion County Tax Collector's office, we doubt *Elrod* is "materially similar" enough to this case to establish clearly the applicable law. Most important, however, *Elrod*—although saying that *preliminary* injunctive relief was appropriate—did not finally decide that the Chief Deputy had some right not to be fired by the Sheriff. Instead, the Supreme Court in *Elrod* affirmed the Seventh Circuit's remand of the case for the determination of whether or not the plaintiffs' rights were violated. *Elrod,* 427 U.S. at 371-73, 96 S.Ct. at 2689-90.

Remand cases such as *Elrod* (and also *Terry*) are of little use to the plaintiff who faces a qualified immunity defense and who must show that the case law has clearly established the unlawfulness of the government actor's decision *under the circumstances.* This idea is so because such cases *do not hold that the government actor behaved unlawfully.* For example, in *Elrod* the district court might have decided on remand that the firing of the Chief Deputy was lawful solely because he was empowered—as plaintiffs are here—to act instead of his employer. (By the way, it seems no court ever concluded the firing of any *Elrod* plaintiff to have been unlawful; the case settled before trial. *See Burns v. Elrod,* 757 F.2d 151, 153 (7th Cir.1985).)

[7]The office of Marion County, Florida Tax Collector is charged with a materially different function than the office at issue in *Branti* (the Rockland County, New York Public Defender.) And, the need for political loyalty may be different between such different kinds of offices.

Violations of the constitutional right at issue in this case (the First Amendment right not to be fired for patronage reasons) are determined based on a standard "framed in vague and sweeping language certain to create vast uncertainty." *Branti,* 445 U.S. at 522-24, 100 S.Ct. at 1297 (Powell, J. dissenting). In the light of such a vague standard, "elected and appointed officials at all levels ... no longer ... know when political affiliation is an appropriate consideration in filling a position." *Id.* at 522-26, 100 S.Ct. at 1297-98.

Justice Powell's concerns in *Branti* do not make *Branti* any less the law, but they do help explain why we have observed that "defendants who allegedly violate public employees' First Amendment freedoms rarely act within "clearly established' contours of law." *Hansen v. Soldenwagner,* 19 F.3d 573, 575 (11th Cir.1994). This case is not the exceptional case where the individual defendant is unentitled to qualified immunity: it was not clearly established at the time Olson acted that firing Plaintiffs was unlawful.

The order denying Olson, in his personal capacity, summary

---

The limits of *Branti* were made clear by the Court's focus on the kind of workers involved in that case: public defenders. The Court observed that the "primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State." *Branti,* 445 U.S. at 518-20, 100 S.Ct. at 1295. The office of the public defender was contrasted with offices which have "broader public responsibilities." *Id.* at 518-19 n. 13, 100 S.Ct. at 1295 n. 13. The office of Tax Collector might be such an office. And, no discussion exists in *Branti* on whether the assistant public defenders were statutorily authorized to act on the Public Defender's behalf in carrying out the duties of the office.

In the end, the facts of *Branti* and the facts of this case are different enough to cloud the question whether Olson's acts were unlawful when he acted.

judgment based on qualified immunity is vacated; we remand for further proceedings[8] and instruct that Olson be granted qualified immunity.

VACATED and REMANDED.

---

[8]Olson also asks us to order the entry of summary judgment in his favor in the suit against him in his official capacity. We decline to address this claim.