### In re POLYGRAPHEX SYSTEMS, INC., Debtor.

### No. 00–11194–8W1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 25, 2002.

Michael C. Markham, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for debtor.

B. Norris Rickey, Pinellas County Attorney's Office, Clearwater, FL, for property appraiser.

Sarah Richardson, Pinellas County Attorney's Office, Clearwater, FL, for tax collector.

*Memorandum Decision and Order Denying Motion for Summary Judgment Filed by Jim Smith, Property Appraiser for Pinellas County*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came on for hearing on December 4, 2001 ("Hearing"),[1] on a motion to dismiss or alternatively grant summary judgment[2] (Doc. No. 235) ("Motion") filed by Jim Smith, Property Appraiser ("Property Appraiser") for Pinellas County, Florida ("County"). The Motion was filed in response to the amended objection (Doc. No. 219) ("Objection") filed by the debtor, Polygraphex Systems, Inc. ("Debtor"), to the County's claim for *ad valorem* taxes (Claim No. 5) ("Claim"). The Claim was filed on behalf of the County by the Tax Collector for Pinellas County ("Tax Collector").

### Procedural Posture of Case

The Debtor filed its petition for relief under chapter 11 on July 19, 2000. On July 28, 2000, the Tax Collector filed the Claim as a secured claim for tangible personal property taxes in the amount of $125,533.03 plus interest. In due course, the Debtor filed the original objection to the Claim (Doc. No. 206) on the ground that the Claim was based on an excessive valuation of the Debtor's personal property.

The Tax Collector filed a response to the original objection, asserting that complete relief could not be obtained on the Objection without joining the Property Appraiser as a party to the contested matter (Doc.

---

1. This memorandum decision is intended to supplement, and to the extent there are any inconsistencies, supersede, the findings of fact and conclusions of law that were stated orally and recorded in open court at the conclusion of the Hearing.

2. In the Motion, the Property Appraiser seeks dismissal of the Objection under Fed.R.Civ.P.

12(b), or in the alternative, summary judgment under Fed.R.Civ.P. 56. Because Fed.R.Civ.P. 12(b) does not apply to contested matters under Fed.R.Bankr.P. 9014, the Court has considered the Motion solely with respect to the prayer for summary judgment, which does apply to contested matters under Fed.R.Bankr.P. 9014 and 7056.

No. 208).[3] At a hearing held on the original objection to the Claim, the Court— after finding merit with this position— granted leave to the Debtor to file an amended objection which the Debtor thereafter filed.

Thereupon, the Property Appraiser filed the Motion, asserting that "based upon the sovereign immunity granted to the State of Florida by the Eleventh Amendment to the United States Constitution, and as supported by the case law, notwithstanding the supremacy clause of the United States Constitution found in Article I, Section 8, the Property Appraiser is sovereignly immune from the ... requested relief." [4]

### *Issues*

The Motion raises the following issues for the court's consideration:

1. Is the Property Appraiser an arm of the state for purposes of asserting Eleventh Amendment sovereign immunity?

2. Is the Debtor's Objection to the Claim filed by the County with respect to *ad valorem* taxes a "suit" against the state for purposes of Eleventh Amendment sovereign immunity?

3. By filing the Claim, did the Tax Collector waive the Property Appraiser's Eleventh Amendment sovereign immunity, if any exists, with respect to the Objection to Claim?

For the reasons stated below, the Court concludes that the Property Appraiser's Motion should be denied upon all three grounds. First, the Property Appraiser is

not acting as an arm of the state for Eleventh Amendment sovereign immunity purposes. Second, the Eleventh Amendment does not apply because an objection to a claim filed by a county with respect to *ad valorem* taxes is not a "suit" against the state. Finally, even if Eleventh Amendment sovereign immunity were available as a defense under such circumstances, the filing of the Claim in the Debtor's case by the Tax Collector on behalf of the County operates as a waiver of that immunity for all purposes in connection with the adjudication of the estate's liability with respect to the Claim.

### *Conclusions of Law*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(B). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

As set out above, the Property Appraiser argues that the Eleventh Amendment grants him immunity from this Court's consideration of the Debtor's Objection to the Claim. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

■ Even though the Eleventh Amendment refers to suits by citizens "of another

---

**3.** It is the Tax Collector's position that he has no authority to alter or amend the underlying assessment. Indeed, under state law, only the Property Appraiser can do so because the Property Appraiser is the appropriate "county officer charged with determining the value of all property within the county ... and with determining the tax on taxable property after taxes have been levied." Fla.Stat.

§ 192.001(3). Moreover, section 194.181 of the Florida Statutes requires that in any suit brought in the state circuit court for judicial review of an action contesting the assessment of any property that the "county property appraiser shall be party defendant."

**4.** Property Appraiser's Memorandum of Law, at 1.

state," it has long been held that this immunity extends to a suit by a citizen against the citizen's own state. *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). As discussed in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Eleventh Amendment precludes federal courts from exercising any jurisdiction in private suits against states. *Seminole Tribe* makes clear that Congress, under its Article I powers, cannot vest federal courts with jurisdiction to hear such suits. *Id.* at 72–73, 116 S.Ct. 1114. The Eleventh Amendment insulates states from " '. . . private parties seeking to impose a liability [in federal court] which must be paid from public funds in the state treasury. . . .' " *Hufford v. Rodgers,* 912 F.2d 1338, 1340 (11th Cir.1990) (quoting *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). "[I]t also serves to avoid the 'indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.' " *Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114 (quoting *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)).

■ However, the immunity granted by the Eleventh Amendment does not bar a federal court from adjudicating the rights of governmental entities under all circumstances. *In re Hechinger Inv. Co. of Del., Inc.,* 254 B.R. 306, 310 (Bankr. D.Del.2000). Three such exceptions to its application are relevant to the Court's analysis of the Property Appraiser's Motion. First, the suit must be against a *state.* U.S. Const. amend. XI; *Hechinger,* 254 B.R. at 310 (citing *Mitchell v. Franchise Tax Bd., State of Cal. (In re Mitchell),* 209 F.3d 1111, 1116 (9th Cir.2000)); *Chandler v. Oklahoma (In re Chandler),* 251 B.R. 872, 875 (10th Cir. BAP 2000).

Second, the legal proceeding must be a *suit*—for example, a "well-established rule is that an action by a private party against a state, which seeks entry of a monetary judgment against the state, is a suit for purposes of the Eleventh Amendment." *Hechinger,* 254 B.R. at 311 (citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Third, a state may voluntarily consent to a suit in federal court. *Hechinger,* 254 B.R. at 311, n. 5 (citing *In re Sacred Heart Hosp.,* 133 F.3d 237, 241 (3rd Cir.1998)). Waiver, under certain circumstances, may amount to such voluntary consent by the state. *Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947).

### 1. A Property Appraiser is Not an Arm of the State for Eleventh Amendment Sovereign Immunity Purposes.

■ As set forth in the Motion, it is the position of the Property Appraiser that he is "sovereignly immune" from the relief requested by the Debtor by virtue of the immunity "granted to the State of Florida by the Eleventh Amendment." In evaluating this position, the starting point is the general rule that the "Amendment's bar to suits in federal courts . . . does not extend to counties, municipal corporations, or other political subdivisions of the state." *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1508 (11th Cir.1990) (citing *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). *See also State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 786 (4th Cir.1997) ("It has long been the law that the Eleventh Amendment does not bar suits in federal court against political subdivisions of the state."); *Smith v. Avino,* 866 F.Supp. 1399 (S.D.Fla.1994) ("Eleventh Amendment immunity does not extend to independent political entities, such as counties."—quot-

ing *Tuveson v. Fla. Governor's Council on Indian Affairs*, 734 F.2d 730, 732 (11th Cir.1984)).

Whether a local governmental entity is protected by Eleventh Amendment immunity turns upon whether it is an "arm of the state." *Hufford*, 912 F.2d at 1340. Thus, the court must determine whether the Property Appraiser is an arm of the state, in which case the Eleventh Amendment protects him, or of the County,[5] in which case it does not. *Id.* For the reasons set forth below, this Court concludes, just as the Eleventh Circuit did in *Hufford* (in the context of a sheriff), that a property appraiser is a county official rather than an agent of the state, and, therefore, is not entitled to Eleventh Amendment immunity.

In *Hufford*, the Eleventh Circuit cited to *Tuveson v. Fla. Governor's Council on Indian Affairs*, 734 F.2d at 732, in which it recognized that the Supreme Court's Eleventh Amendment analysis requires "special attention to the state law creating and defining the entity." *Hufford*, 912 F.2d 1338, 1340. Applying *Hufford*, a court must consider the following four aspects of state law: (a) how state law defines the entity, (b) what degree of control the state maintains over the entity, (c) what is the source of funding for the entity, and (d) who is responsible for judgment against the entity. *Id.* While not specifically addressed in *Hufford*, other courts have also looked to whether the attorney

representing the governmental entity in the action is employed by the county or by the state. *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 997 F.Supp. at 1485.

(a) *Definition Under State Law.*

In *Hufford*, the court first turned to the provisions of the Florida Constitution pertaining to "Local Government," Fla. Const., art. VIII, and noted that it specifically provides that a sheriff is a "County Officer." *Hufford*, 912 F.2d 1338, 1340 (citing *Lundgren v. McDaniel*, 814 F.2d 600, 605 n. 4 (11th Cir.1987) for the proposition that the "Florida Constitution indicates that a sheriff is a county officer"). Indeed, this is the same constitutional provision that creates the office of the property appraiser. It states:

(d) COUNTY OFFICERS. There shall · be elected by the electors of each county, for terms of four years, a sheriff, a tax collector, a *property appraiser*, a supervisor of elections and a clerk of the circuit court.

Fla. Const., art. VIII, § 1(d) (emphasis supplied).

Consistent with this, the charter for the County lists the "county officers" as the following: "The Clerk of the Circuit Court, Property Appraiser, Tax Collector, Sheriff and Supervisor of Elections." County Charter, Article IV, § 4.03. Moreover, the Florida Statutes define both county property appraisers and county tax

---

**5.** While the Property Appraiser was joined as a party to this contested matter for the reasons discussed above, the Claim was actually filed by the "Tax Collector, Pinellas County." The Court is addressing the arguments made by the Property Appraiser in the context that they have been made, that is, in his role as property appraiser rather than as a representative of the County. Clearly, if the County on its own behalf made these same arguments, they would similarly fail. *Am. Charities for*

*Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 997 F.Supp. 1481, 1485 (M.D.Fla.1998) (Kovachevich, C.J.) ("... Pinellas County is not 'an arm of the state' and therefore is not entitled to immunity under the Eleventh Amendment"). This Court is also of the opinion that if the Tax Collector had raised this issue, the outcome would have been the same, due to the similarities in the governing statutory scheme.

collectors as "county officers," and as a "county agency." Fla.Stat. § 192.001(3) and (4); *see also* Fla.Stat. § 121.052 (referring to "[a]ny constitutional county elected officer ... including ... property appraiser...."); Fla.Stat. § 145.011, *et seq.* (providing for "Compensation of County Officials"); and Fla.Stat. § 11.45(1)(b) (defining "county agency" to include a property appraiser).

### (b) *State Control.*

Under Florida law, the State of Florida has the "responsibility to secure a just valuation for *ad valorem* tax purposes of all property and to provide for a *uniform* assessment as between property within each county and property in every other county or taxing district." Fla.Stat. § 195.0012 (emphasis added). Consistent with this legislative purpose and intent, the State of Florida Department of Revenue ("DOR") has general supervision of the assessment and valuation of property. Fla.Stat. § 195.002(1). However, as will be discussed below, a closer review of the relevant statutes and cases leads this Court to the conclusion that this supervisory oversight is primarily to ensure statewide uniformity in the assessment and collection of local taxes. The DOR's role is restricted to a more advisory role while the property appraisers are left with wide discretion and latitude in performing their duties.

### (1) *DOR's Role*

An analysis of the statutory and regulatory framework under which Property Appraisers operate, reveals elements of both state control and local autonomy. For example, the DOR is charged with preparing and maintaining a current manual of instructions for property appraisers under section 195.062 of the Florida Statutes, as well as prescribing forms for the property appraisers under section 195.022. Additionally, the DOR prescribes rules and regulations for the property appraisers, tax collectors, clerks of the courts, and value adjustment boards pursuant to section 195.027. The Florida Statutes also mandate the exchange of information among the DOR, the property appraiser's office, the tax collector's office, the Auditor General, and the Office of Program Policy Analysis and Government Accountability. Fla.Stat. 195.084.

At first blush, these factors appear persuasive in making a case for state control. However, as recognized by both the state statutes and case law, the main thrust of all these statutes and regulations is to ensure uniformity in the collection and assessment of property taxes. In fact, section 195.0012 specifically recognizes this as the goal:

> It is declared to be the legislative purpose and intent in this entire chapter [195] to recognize and fulfill the state's responsibility to secure a just valuation for ad valorem tax purposes of all property within each county and property in every other county or taxing district.

Fla.Stat. § 195.0012.

Case law is also replete with this pronouncement as the main object of Florida's statutory scheme. In *Powell v. Kelly,* 223 So.2d 305, 307 (Fla.1969) (citing *Burns v. Butscher,* 187 So.2d 594, 595 (Fla.1966)), the state's highest court noted that the "exercise of unbridled discretion by sixty-seven tax assessors without their being anchored to any master plan would result in an imbalance." Again in another case, the Florida Supreme Court noted that "the Florida Department of Revenue is clearly charged with implementing the legislature's intention that Florida's *ad valorem* taxation laws are enforced, implemented and administered uniformly throughout the state." *Dept. of Revenue v. Ford,* 438

So.2d 798, 800 (Fla.1983) (citing Fla.Stat. § 195.027(1) (1981)).

Just because the stated goal of the Florida Legislature is to ensure uniformity statewide in the assessment and collection of local taxes, it does not necessarily follow that the state exercises a great degree of control over these county officials. On the contrary, the DOR's authority is limited in many ways. For example, as recognized by the state itself, the DOR must promulgate regulations that are consistent with the valuation standards expressly contained in the Florida statutes. *Op.Atty. Gen.,* 071–235, Aug. 10, 1971. Specifically, section 193.011 already sets forth the factors to be considered by county property appraisers in deriving just valuations of the taxpayers' properties. Fla.Stat. § 193.011. Thus, the DOR's regulations operate as an aid to the property appraisers in exercising their judgment in the performance of their duties. *See* Fla.Stat. § 195.002 (DOR'S supervision "consist[s] primarily of aiding and assisting county officers in the assessing and collection functions, with particular emphasis on the more technical aspects."); Fla.Stat. § 195.062 ("the standard measures of value ... shall be used to *assist* tax officers...." (emphasis added)).

Under this statutory framework, the property appraiser, or deputy property appraisers appointed by the elected property appraiser,[6] routinely conduct this appraisal independently of any direct state involvement. *See generally* Fla.Stat. § 193.023 ("Duties of the property appraiser in making assessments"). The property appraiser's independence in determining values is amply illustrated in Florida case law. To this end, the Florida Supreme Court has "expressly recognized" that statewide uniformity in *ad valorem* taxation is "more a goal than a compellable right." *Dept. of*

Revenue v. Ford, 438 So.2d 798, 800 (Fla. 1983) (citing *Spooner v. Askew,* 345 So.2d 1055, 1059 (Fla.1976)). Accordingly, courts have accorded great deference to the property appraiser's discretion. In this regard, the state's highest court has noted that:

> Florida property appraisers are constitutional officers who are of necessity provided with great discretion. Indeed, the preservation of the local property appraiser's valuation discretion is of fundamental importance.... Determination of just value inherently and necessarily requires the exercise of appraisal judgment and broad discretion by Florida property appraisers.... [T]he Legislature has the power to regulate the method of assessment but not to interfere with the assessor's discretion....

*Ford,* 438 So.2d at 802. The Florida Supreme Court has also recognized that:

> The appraisal of real estate is an art, not a science.... Although the use of [the DOR's] guidelines may be mandatory in appraisal work, their application to various situations calls upon the exercise of judgment. So it is that any standard measure of value promulgated by the State Comptroller would not destroy the right of the tax assessor to exercise his discretion or judgment in reaching the ultimate conclusion of just value.

*Powell v. Kelly,* 223 So.2d 305, 309 (Fla. 1969). Such deference by the court to the property appraisers' discretion is an indication of their independence from state control.

Another case which illustrates this independence *vis-a-vis* the state is *District Board of Lee County v. Askew,* 278 So.2d 272 (Fla.1973). In that case, the Florida Legislature statutorily provided the State

6. Fla.Stat. § 193.024.

Auditor General with the ability to automatically override the assessment rolls in the area of school financing. The Florida Supreme Court struck down that statute as unconstitutional. *Id.* at 275–76. The state's highest court held that the "duly-elected, constitutionally-provided county tax assessors" are clothed with a "presumption of correctness." *Id.* The fact that the state contests the assessments "does not act to magically dispel the presumption of correctness with which the actions of the tax assessors are clothed...." *Id.* at 276. The court also noted that it had approved controls placed by the state on the property appraiser in the past but had only approved them after ensuring that they were not usurping the duties or materially interfering with the assessor's discretion. *Id.* (citing *Burns v. Butscher,* 187 So.2d 594, 596 (Fla.1966)). The ruling in *Lee County* is yet another indication that the state's control over the Property Appraiser is very limited.

Similarly, section 193.114 also demonstrates the property appraiser's independence, despite the seeming appearance of state control. This section requires the property appraiser to prepare "assessment rolls" which are subject to the DOR's regulations. Fla.Stat. § 193.114. Facially, this appears to support the position of state control over the property appraisers. However, a closer examination of the statute reveals otherwise. While it is clear that the DOR has the power to approve or disapprove a tax roll submitted for review, the DOR is powerless to mandate that the property appraiser make any specific adjustment to the tax roll. *Op.Atty.Gen.,* 072–398, Nov. 9, 1972. Any adjustment made must still be left to the discretion of the property appraiser. *Id.*

Also persuasive is section 195.084 of the Florida Statutes, which mandates certain exchange of information among the county property appraisers' offices, the tax collectors, and certain other state agencies (including the DOR). This section requires that the property appraisers and tax collectors "cooperate fully" with the representatives of the various state departments. Fla.Stat. § 195.084(2). However, this sharing of information is subject to the requirement of confidentiality. Fla. Stat. § 195.084(1). The breach of this confidentiality is a criminal offense—a "misdemeanor of the first degree." *Id.* Logically, if the property appraiser or tax collector were merely an arm of the state, there would be little need for such a statutory requirement for sharing information and no need for the imposition of a confidentiality duty, the breach of which is punishable as a crime.

### (2) *Personnel Issues*

Another point that may initially appear to support the conclusion that the state exercises control over the property appraiser is that the governor has the ability to "suspend ... any tax collector or other officer, whose duty it is to perform any act connected with the assessment or collection of taxes," who failed or refused "to perform any duty or act, to make any return, or pay over any money required by law." Fla.Stat. § 215.10. Notwithstanding this, importantly the governor may only "suspend" and not completely dismiss that official. Moreover, the term of the suspension is limited because it may not be "beyond the adjournment of the next session of the Senate." *Id.*

That the governor is vested with this limited right is not surprising given that the stated legislative goal is to ensure uniformity in the area of assessment and collection of local taxes. On the other hand, the governor's ability to suspend county officers also extends to officials other than the property appraiser when it

comes to the reporting and disposition of funds. *See* Fla.Stat. § 218.36 (governor may suspend officers for failure to comply with statutory requirements for reporting and disposition of fees and commissions earned). In fact, the sheriff, who does not act as an arm of the state, is also subject to this provision.[7] Thus, the fact that the governor exercises limited ability to suspend a county official is not persuasive in making a case for state control.

As to the property appraiser's own personnel, he or she "may appoint deputies to act on their behalf in carrying out the duties prescribed by law." Fla.Stat. § 193.024. Thus, the property appraiser has ample discretion in the employment of his or her staff.

### (3) *Appeals Process*

When one reviews the statutory framework for property appraisers in the appeals process, it is clear that the state has no direct role at all. If a taxpayer objects to the assessment, the taxpayer's first right of redress is to request that the tax appraiser or a member of his or her staff confer informally regarding the correctness of the assessment. Fla.Stat. § 194.011(2). If still dissatisfied, the taxpayer can then file a petition to the "value adjustment board" for the county in which the property is located. Fla.Stat. § 194.015. It is noteworthy that the composition of the value adjustment board is made up of members of the locally elected officials from the county. Fla.Stat. § 194.015. If either the property appraiser or the taxpayer disagrees with the decision of the value adjustment board, he or she may then seek redress in the state circuit courts. Fla.Stat. § 194.036, 194.171.

The next logical inquiry is the extent of state control over this value adjustment board. Section 194.036(c) of the Florida Statutes provides that the property appraiser may notify the DOR of a "consistent and continuous violation of the intent of the law or administrative rules by the value adjustment board in its decisions." The DOR may investigate and within a set statutory timeframe report its findings or recommendations to the property appraiser. Fla.Stat. § 194.036. If such a violation indeed exists, then the DOR will notify the property appraiser "who *may* thereupon bring suit in circuit court against the value adjustment board for injunctive relief. . . ." *Id.* (emphasis added).

Given this statutory framework, it is not surprising that state courts have recognized that it is the property appraiser who ultimately decides whether to act upon a suit against the value adjustment board. *Property Appraisal Adjustment Bd. of Sarasota County v. Florida Dept. of Revenue*, 349 So.2d 804, 805–06 (Fla. 2d DCA 1977) (Even when the DOR determines probable cause that the value adjustment board has consistently and continuously violated the intent of the law, the ultimate decision to pursue an action in court remains within the discretion of the property appraiser). Clearly, this appeals process takes place locally and is directed in its implementation by the locally elected county officer—the property appraiser—fulfilling his or her statutory duties independently rather than as an agency of the state. *Cf. Hufford*, 912 F.2d at 1341 (citing *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). *See also* Fla.Stat. § 137.03 (providing that "[t]he county property appraiser shall give a bond as

---

**7.** *See Hufford,* 912 F.2d 1338 (county sheriff is not entitled to Eleventh Amendment immuni-

ty).

required by the board of county commission").

Accordingly, this Court discerns in this statutory framework no intent for state officials to control or supervise the day-to-day appraisal operations of the Property Appraiser.

### (c) *Funding Source.*

The compensation of property appraisers along with all other county officials is statutorily prescribed. Chapter 145 of the Florida Statutes sets forth the compensation for the board of county commissioners, clerk of circuit court, county comptroller, sheriff, supervisor of elections, and property appraiser and tax collector. Fla. Stat. §§ 145.10, 145.012, 145.16. The purpose behind the statute is to ensure "that a uniform and not arbitrary and discriminatory salary law" replaces "the haphazard, preferential, inequitable and probably unconstitutional local law method of paying elected county officers." Fla.Stat. § 145.011. Thus, just as with property appraisals, the goal of these statutes is uniformity and not state control over these officials.

The budget of a property appraiser's office must be submitted to the DOR for approval pursuant to section 195.087, Florida Statutes. However, this statute, as previously discussed, must be viewed in light of the stated intent of the state's legislature to promote uniformity statewide in the assessment and collection of taxes.

Under the statutory scheme governing a property appraiser's budget, the budget then provides the basis for funding of the property appraiser's office through the collection of commissions from the various taxing authorities of each county. Fla. Stat. §§ 195 .087(b) and 218.36. In the part of the County's overall budget dealing with the budget for the Property Appraiser's office for the year 2002, for example, 100 percent of the projected $7,906,410 expenditures of that office will be covered by the statutory fees to be paid by the County pursuant to section 192.091 of the Florida Statutes.[8] Thus, the state does not fund the expenses for the work performed by the property appraiser in assessing the properties located in the county.

All the funds collected by the county officers (including property appraisers, tax collectors, and sheriffs) are reported annually to the board of county commissioners. Fla.Stat. § 218.36. Any money collected in excess of that allowed by law is paid into the county general fund. In the case of property appraisers, the excess is "divided into parts for each governmental unit which was billed and which paid for the operation of the property appraiser's office in the same proportion as the governmental units were originally billed. Such part shall be an advance on the current year's bill, if any." Fla.Stat. § 218.36(2).

The County's overall budget for the year 2002, of which the Property Appraiser's budget is a small part, is approximately $1.5 billion with only $121.1 million or 8.1

---

8. *See* http://www.co.p inellas.fl.us/bcc/budget /fy2002/operatingand capital/propertyapp.pdf (Website figures taken as of February 2002). The Court takes judicial notice of the authenticity of the County's website under Fed. R.Evid. 201(b) (judicial notice of adjudicative facts) and 901(b)(7) (authentication of public records or reports) and considers the County's annual budget for the fiscal year 2002 part of the record, as a "public record," under Fed.R.Evid. 803(8) (hearsay exception for public records or reports). *See, e.g., JB Oxford Holdings, Inc. v. Net Trade, Inc.,* 76 F.Supp.2d 1363 (S.D.Fla.1999); *Publications Int'l, Ltd. v. Burke/Triolo, Inc.,* 121 F.Supp.2d 1178 (N.D.Ill.2000); *Pollstar v. Gigmania, Ltd.,* 170 F.Supp.2d 974 (E.D.Cal.2000).

percent of its total budget provided for by both the state and the federal government. The remaining 91.9 percent of the budget comes from local sources.[9] The mere fact that a local governmental body receives some funds from the general state reserves does not transform it into an arm of the state. *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 997 F.Supp. 1481, 1484 (M.D.Fla.1998).

In conclusion, there is ample evidence of the Property Appraiser's fiscal autonomy.

### (d) *Funds to Satisfy Judgment.*

In this case, we are not dealing with a suit seeking monetary relief against the County.[10] Rather, the Objection is based on a dispute over the value of the Debtor's property as it relates to the amount of the Claim filed by the County against the Debtor. Accordingly, the Court is not presented with the specter of " '. . . private parties seeking to impose a liability [in federal court] which must be paid from public funds in the state treasury. . . .' " *Hufford,* 912 F.2d at 1340 (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)).[11]

Accordingly, the relief sought by the Debtor in this case will not result in a money judgment payable from state funds.

### (e) *Legal Representation of the Property Appraiser*

As discussed above, while not specifically addressed in *Hufford,* other courts have looked to whether the attorney representing the governmental entity in the matter is employed by the county or by the state. *American Charities,* 997 F.Supp. at 1485. Both the Property Appraiser and the Tax Collector are represented in this matter by attorneys from the Pinellas County Attorney's Office and not the state attorney general. The county attorney is directly responsible to the County and not the state pursuant to section 5.02 of the County Charter. *Id.* Just as the court in *American Charities* considered this factor in concluding that the county is not an arm of the state, this Court also concludes that this factor weighs against finding that the Property Appraiser is an "arm of the state."

In summary, it appears that all the factors that must be considered in deciding whether the Property Appraiser is an arm of the state weigh in favor of this Court's concluding that a property appraiser acts on behalf of a county and other non-state municipal bodies and taxing districts, rather than as an agent for the state. Accord-

---

**9.** See http://www.pinellascounty.org/ budget/fy2002/BudgetSummary (figures as of February 2002).

**10.** *See infra,* Opinion, Part 2.

**11.** Even if some funds were due the Debtor, the money would not come from the state. While it is true that the DOR "shall pass upon and order refunds," the refunds ordered by the court—which do not result in changes in the assessed value on a tax roll—come directly from the tax collector. Fla.Stat. § 197.182(1)(b)1. Similarly, when a payment is made in error because of an error in the tax notice, "the refund must be made directly by the tax collector and does not require approv-

al from the department." Fla.Stat. § 197.182(1)(b)2. In all other circumstances, when the DOR orders a refund, the order is sent to the tax collector who calculates the pro rata share of each county district school board, municipality, or special district. Then these entities have three alternative methods to comply with the refund order: (1) authorize payment from the "undistributed funds held for that taxing authority by the tax collector," (2) make payments from currently budgeted funds, if available, or (3) notify the tax collector that it cannot currently make the payments and provide for the payment of the refund in its budget for the next year. Fla. Stat. § 197.182(2)(b).

ingly, because property appraisers in Florida do not act on behalf of the state, it is the Court's opinion that the Eleventh Amendment does not apply.[12] The Property Appraiser is not entitled to Eleventh Amendment immunity and its motion must be denied on this ground.

## 2. An Objection to a Claim Filed by a County With Respect to Ad Valorem Taxes is Not a "Suit" Against the State.

■ Eleventh Amendment immunity extends to "any suit in law or equity" prosecuted against a state. U.S. Const. amend. XI; *In re Psychiatric Hospitals of Florida, Inc.*, 216 B.R. 660, 661 (M.D.Fla.1998); *Hechinger Investment Co. of Delaware,* *Inc.*, 254 B.R. 306, 310 (Bankr.D.Del.2000). There is no precise definition of "suit" for purposes of the immunity provided by the Eleventh Amendment. Clearly, the Eleventh Amendment does not immunize states from all effects of bankruptcy. Indeed, federal law has supremacy in respect of a bankruptcy court's dealing with the liquidation and distribution of debtors' assets to creditors. *People of State of New York v. Irving Trust Co.*, 288 U.S. 329, 333, 53 S.Ct. 389, 77 L.Ed. 815 (1933) (Federal government possesses supreme power in respect of bankruptcies).

■ Thus, while the Eleventh Amendment does impose limits on the jurisdiction of a bankruptcy court when it comes to the

---

**12.** There is a body of case law holding that a property appraiser and a tax collector have "qualified immunity" under 42 U.S.C. § 1983 (the "Civil Rights Act"). *See Beauregard v. Olson*, 84 F.3d 1402 (11th Cir.1996) (tax collector has qualified immunity); *Parrish v. Nikolits*, 86 F.3d 1088 (11th Cir.1996) (property appraiser has qualified immunity). In its consideration of the issues involved in this case, the Court has analyzed this concept and how this relates to Eleventh Amendment sovereign immunity.

In this regard, the Court recognizes that there are several types of immunities against suits available for the government. Of course, there is the Eleventh Amendment immunity at issue here in this case. Then there is state sovereign immunity that protects government entities from claims in the state courts. *See Hufford*, 912 F.2d at 1341 (distinguishing the two). But within the context of an individual's claims of immunity—mostly arising in cases related to Civil Rights Act suits—one must first distinguish whether that officer is sued in his or her "official capacity." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

If it is an "official capacity" suit, then sovereign immunity may apply since such suits are "another way of pleading an action against an entity of which an officer is an agent." *Id.* In other words, courts treat official capacity suits as a suit against the entity and not against the individual. *Id.* at 166,

105 S.Ct. 3099. On the other hand, if the suit is in the personal capacity against the officer, then in a Civil Rights Act suit, the official may assert "qualified" or "absolute" immunity as a defense. *Id.* These two types of personal immunities are premised upon the balancing of two goals: compensating those who have been injured by official action and protecting the government's ability to perform its traditional functions. 15 Am.Jur.2d Civil Rights § 111 (2000).

Thus, that an official may be entitled to the personal immunity defense in a civil rights suit does not have any bearing upon the issue of whether the governmental unit is entitled to sovereign immunity. Indeed, these two concepts are unrelated in their application. To illustrate, in a civil rights suit, the defense of qualified immunity may be available to an official in a municipality when sued in his or her individual capacity, but obviously that municipality would not be entitled to either the defense of qualified immunity or sovereign immunity since it cannot be sued in the individual capacity and it is not a state. *Id.* at § 114 (2000) (citing to *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)).

The court concludes that the concept of "qualified immunity" is a legal doctrine separate and distinct from sovereign immunity under the Eleventh Amendment. One does not have any bearing on the other. Thus, this line of cases is not relevant to the Court's analysis of the issues in this case.

rights of a state, certain bankruptcy proceedings do not constitute "suits" for Eleventh Amendment purposes. For example, there is authority for the proposition that the Eleventh Amendment does not prevent a discharge of debt. *Texas v. Walker*, 142 F.3d 813, 822–23 (5th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999); *Virginia v. Collins (In re Collins)*, 173 F.3d 924, 929 (4th Cir.1999), *cert. denied*, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000) (no Eleventh Amendment immunity from suit where the debtors asked for their bankruptcy case to be reopened—but did not directly sue the state—for a determination that certain debts owed the state were discharged pursuant to a previous discharge order). Other examples exist. A motion to approve a post-petition financing arrangement that has the effect of prohibiting state agencies from setting off benefits owed to debtors against their pre-petition claims is not a "suit" against a state. *In re Sun Healthcare Group, Inc.*, 245 B.R. 779, 783 (Bankr.D.Del.2000). A bankruptcy proceeding to determine the scope of the automatic stay, even if a contested matter, is not a "suit." *In re International Heritage, Inc.*, 239 B.R. 306, 309–10 (Bankr.E.D.N.C.1999). The confirmation of a plan that discharges a debt owed to the state is not a "suit." *In re Barrett Refining Corp.*, 221 B.R. 795 (Bankr.W.D.Okla.1998). Finally, as recognized by the United States Supreme Court as long ago as 1947, "[i]f the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains Objections to the claim." *Gardner v. New Jersey*, 329 U.S. at 573–74, 67 S.Ct. 467.

 In this case, the Debtor has filed an Objection to the County's claim on the ground that it is based on an excessive valuation of the Debtor's personal property. The Debtor cites as authority Bankruptcy Code section 505, which deals with a bankruptcy court's power to determine tax liabilities. This was the precise situation before the Honorable Richard Lazzara, on appeal from a bankruptcy court, in another case involving the Property Appraiser, *Jim Smith, Pinellas County Property Appraiser v. Psychiatric Hosp. of Fla., Inc. (In re Psychiatric Hosp. of Fla., Inc.)*, 216 B.R. 660 (M.D.Fla.1998) (Lazzara, D.J.). In *Psychiatric Hospitals*, the relief sought by the debtor was a revaluation of the property of the debtor for the purpose of reducing its tax liability. In affirming the bankruptcy court's decision, Judge Lazzara observed that the only relief sought, consistent with the provisions of section 505, was to have the bankruptcy court determine the debtor's tax liabilities regarding certain properties that the Property Appraiser had previously assessed. *Id.*

As noted by Judge Lazzara, "It in no way sought the entry of a money judgment against the State, which is the core concern of the Eleventh Amendment." *Id.* at 661 (citing *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)). Thus, to construe a motion brought under section 505 against the State of Florida as a "suit in law or equity" in violation of the Eleventh Amendment "would be inconsistent with the plain meaning of that Amendment." *Psychiatric Hospitals*, 216 B.R. at 661.

The Court is in agreement with the conclusions reached by Judge Lazzara in *Psychiatric Hospitals* and, thus, similarly concludes that an objection to a claim filed by a taxing authority does not constitute a "suit" within the meaning of the Eleventh Amendment. Therefore, the Property Appraiser's Motion must be denied on this ground also.

### 3. By the County's Filing a Claim in the Debtor's Case, Sovereign Immunity Has Been Waived With Respect to the Objection to the Claim.

Even assuming, *arguendo*, that the Eleventh Amendment applies to this matter, any potential sovereign immunity defense by the Property Appraiser has been waived under these circumstances. The United States Supreme Court addressed waiver of sovereign immunity in this context in *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504. In *Gardner*, the State of New Jersey filed a proof of claim for unpaid taxes. The debtor objected to the state's claim. In response, the State of New Jersey claimed that the objection violated its Eleventh Amendment immunity from suit. *Id.* at 571, 67 S.Ct. 467. In rejecting New Jersey's sovereign immunity argument, the Court concluded that:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.... The State is seeking something from the debtor. No judgment is sought against the State.... When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Id.* at 573–74, 67 S.Ct. 467 (internal citation omitted). *See also New York v. Irving Trust Co.*, 288 U.S. 329, 332, 53 S.Ct. 389, 77 L.Ed. 815 (1933) ("If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible"); *Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883) (holding that the State of Rhode Island had waived its sovereign immunity by voluntarily intervening as a claimant to a bankruptcy fund paid into federal court).

In *State of Georgia Department of Revenue v. Burke (In re Burke)*, 146 F.3d 1313 (11th Cir.1998), the Eleventh Circuit relied on the Supreme Court's decision in *Gardner* in the context of an adversary proceeding against the State of Georgia that alleged that the state's efforts to collect on a discharged debt violated the discharge injunction. *Id.* at 1319. The Eleventh Circuit concluded that in such instances, a state waives its sovereign immunity for "purposes of the adjudication of those claims." *Id.* at 1319. If under the controlling precedent of *Burke*, a state which has filed a proof of claim is held to have waived Eleventh Amendment sovereign immunity in connection with an adversary proceeding against the state, then clearly a routine objection to a claim filed by a tax collector on behalf of a county also constitutes such a waiver.

To address the waiver argument, the Property Appraiser's defense is that it was the Tax Collector that filed the Claim. Since the Property Appraiser is not the governmental entity that filed the Claim, he argues, the doctrine of "waiver" is inapplicable under these circumstances, and he did not consent to being named as a party in this proceeding. As discussed below, this argument has no merit.

The same set of facts arose in the case of *Nana's Petroleum, Inc. v. Clark (In re Nana's Petroleum, Inc.)*, 234 B.R. 838 (Bankr.S.D.Fla.1999). In *Nana's*, the property appraiser made the identical argument. The Honorable Paul Hyman, Jr. rejected the property appraiser's argument in *Nana*, reasoning that when the tax collector filed a proof of claim for certain tax liens, "the State's sovereign immunity was waived with respect to *that*

*claim." Id.* at 848 (emphasis in original). Consequently, Judge Hyman concluded, "every state officer associated with *that claim* was subject to being named as a [d]efendant in the [a]dversary [p]roceeding to determine the validity, extent, and priority of the tax liens underlying *that claim." Id.* at 848–49 (emphasis in original).

Importantly, in both this case and the *Nana's* case, the only reason the Property Appraiser is made a party to the Objection is section 194.181(2) of the Florida Statutes, which states that "[i]n any case brought by the taxpayer or association contesting the assessment of any property, the county property appraiser shall be party defendant." Although the property appraiser has no monetary stake in the outcome, presumably this statute was enacted because the party objecting to the claim is ultimately challenging the property appraiser's valuation.

In *Nana's*, the court stressed that jurisdiction over the subject matter was invoked based on the subject matter of the suit and not the parties named therein. *Id.* at 849. Accordingly, the court held that the waiver occurred as to the claim when it was filed by whoever was the proper person to file it—as provided by law, the tax collector—for all purposes in connection with the court's determination of the debtor's liability pursuant to the filed claim. *Id.* This Court is in complete accord with the rationale and holding of the court in *Nana's* and finds that the filing of the Claim by the Tax Collector waives any sovereign immunity that the Property Appraiser may have had for purposes of the Court's resolution of the Ob-

jection filed by the Debtor. To allow the Property Appraiser to hide behind the technicality that he did not file the Claim would result in potentially shielding the County from any judicial review by this Court of a claim that it chose to file in this bankruptcy case.[13]

### Conclusion

For the foregoing reasons, the Court concludes that Eleventh Amendment sovereign immunity is not available to the Property Appraiser in the context of the Debtor's Objection to the Claim for unpaid *ad valorem* taxes. Specifically, the Court concludes that a property appraiser is a county officer rather than an agent of the state and thus is not entitled to Eleventh Amendment sovereign immunity. The Court further concludes that an objection to a claim filed by a county with respect to *ad valorem* taxes is not a "suit" for Eleventh Amendment sovereign immunity purposes. Finally, the Court concludes that to the extent that Eleventh Amendment sovereign immunity applies, the filing of a claim in a bankruptcy case operates as a waiver of the immunity for all purposes in connection with determining the estate's liability with respect to that claim.

Accordingly, for these reasons, it is

ORDERED that the Motion is denied.

---

13. *Cf. Stanley v. Student Loan Services, Inc. (In re Stanley)*, 273 B.R. 907, 911–13 (Bankr. N.D.Fla.2002) (Killian, C.B.J.) (a state cannot restore its sovereign immunity by withdrawing its proof of claim—"Pandora cannot be forced back in to the box....").